FILED01 FEB '12 16:17usDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:06-cr-00178-1-JO |
| Plaintiff-Respondent, | ) | (Civil No. 10-70007-JO) |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| ERIC LAVAN WILLIAMS, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

Eric Lavan Williams
Reg. No. 69385-065
FCI Victorville - II
P. O. Box 5300
Adelanto, CA 92301

Petitioner Pro Se

Thomas H. Edmonds
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Of Attorneys for Respondent

JONES, Judge:

Currently before the court is *pro se* petitioner Eric Lavan Williams's Motion (doc. # 135) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Based on the sufficiency of the record in this case, I conclude that there is no need for an evidentiary hearing; and, for the reasons set forth below, petitioner's § 2255 motion is DENIED.

## BACKGROUND

On April 26, 2006, petitioner was indicted for Felon in Possession of a Firearm (Count One) in violation of 18 U.S.C. § 922(g)(1) and Possession of an Unregistered Short Barreled Rifle (Count Two) in violation of 26 U.S.C. §§ 5845(a)(4), 5841, 5861(d), and 5871. (Indictment (doc. # 1)); see also (Superseding Indictment (doc. # 70)). The original indictment gave petitioner notice of an enhancement based on his prior convictions, which included convictions for Aggravated Battery, Armed Violence, and Attempted Armed Robbery. Petitioner received court appointed counsel, Kenneth R. Walker, on June 13, 2006. Judge Haggerty granted petitioner's request for new counsel on July 27, 2006, and the court appointed John Storkel on August 4, 2006. Mr. Storkel moved to withdraw on October 3, 2006, and the court appointed John S. Ransom on October 18, 2006.

On February 14, 2007, the government filed a formal Notice of Enhancement of Penalty, which gave notice of the applicability of the Armed Career Criminal Act ("ACCA") to the charge of Felon in Possession of a Firearm. (Notice of Enhancement (doc. # 69)).

On February 16, 2007, the Government submitted a plea offer to Mr. Ransom. The offer allowed petitioner to plead guilty to both counts of the superseding indictment, provided that he accepted the application of the ACCA, and agreed to a recommended sentence of 188 months.

2 - OPINION AND ORDER

(Proposed Plea Agreement, ¶¶ 2, 3, 6, 8).  On February 20, 2007, petitioner testified in open

court that he unequivocally intended to refuse the plea offer and try his case to a jury.  (Transcript

of Hearing, February 20, 2007, pp. 11-15).  Petitioner also requested at the hearing that Mr.

Ransom withdraw as petitioner's counsel.  Id. at 15.  The court granted petitioner's motion, and

permitted Mr. Ransom withdraw.  On March 8, 2007, the court appointed Mark R. Bailey as trial

counsel.

On January 13, 2007, after a two-day jury trial, defendant was found guilty on both counts

of the superceding indictment (Jury Verdict (doc. # 112)).  On October 15, 2007, following a

hearing on the contested issues at sentencing, this court sentenced petitioner on Count One (felon

in possession of a firearm) to 288 months imprisonment and on Count Two (unlawful possession

of a short-barreled rifle)  to 120 months imprisonment, to run concurrently.  (Judgment

(doc. # 121)).

On October 22, 2007, defendant filed a notice of appeal.  Petitioner was appointed new

counsel for his direct appeal, Kelly R. Beckley.  On appeal, petitioner argued only one issue in

his opening brief:  Whether the District Court erred by finding that petitioner's conviction for

possession of a short-barreled rifle was a "crime of violence" for Career Offender sentencing

enhancement purposes.  In a summary unpublished disposition, the Ninth Circuit Court of

Appeals concluded that the district court did not err in its finding that possession of a short-

barreled rifle constituted a "crime of violence," and affirmed the 288-month sentence as imposed

by the district court.  United States v. Eric Lavan Williams, 297 Fed. Appx. 599, No. 07-30416,

2008 WL 4648977 (9th Cir. Oct. 16, 2008).

3 - OPINION AND ORDER

On April 9, 2010, petitioner timely filed a motion to Vacate or Correct Sentence under 28 U.S.C. § 2255. Construing the § 2255 motion in a manner most favorable to the *pro se* petitioner, the court has identified fourteen separate grounds for relief. Petitioner's allegations may be generally divided into claims of judicial misconduct, prosecutorial misconduct, independent constitutional issues, ineffective assistance of counsel, and actual innocence, as follows:

Ground One (judicial misconduct): Judge Haggerty should have recused himself from hearing and ruling on petitioner's motion to suppress physical evidence because, in reaching his decision, Judge Haggerty relied on a district court opinion that he wrote.

Ground Two (judicial misconduct): Judge Jones improperly allowed petitioner's admission of guilt to be introduced into evidence and to remain part of the record.

Ground Three (prosecutorial misconduct): The government vindictively enhanced its charges against petitioner by applying the ACCA to petitioner's charges in retaliation for petitioner not accepting the prosecution's offered plea bargain.

Ground Four (prosecutorial misconduct): The government acted improperly by presenting false hearsay testimony to the grand jury that indicted petitioner.

Ground Five (prosecutorial misconduct): The government committed prosecutorial misconduct by presenting to petitioner a grand jury indictment lacking a foreperson's signature.

Ground Six (prosecutorial misconduct): The government committed prosecutorial misconduct by failing to prosecute Ms. Donna Morrisson, a passenger in the vehicle.

4 - OPINION AND ORDER

Ground Seven (independent constitutional issue):  Admitting evidence of the weapons found in the vehicle, and petitioner's confession to Gresham police officers, violated petitioner's Fourth Amendment and Fifth Amendment rights, respectively.

Ground Eight (independent constitutional issue):  Petitioner was deprived of his Sixth Amendment right to a jury of his peers because the venire excluded Blacks and other minorities and ultimately none of the chosen jurors were Black or Hispanic.

Ground Nine (ineffective assistance of counsel):  John S. Ranson, petitioner's counsel at the time the government submitted its plea offer for petitioner's review, rendered ineffective assistance of counsel by giving petitioner only fifteen minutes to consider the plea offer.

Ground Ten (ineffective assistance of counsel):  Petitioner's counsel rendered ineffective assistance by failing to renegotiate or renew the plea offer.

Ground Eleven (ineffective assistance of counsel):  Mr. Ransom rendered ineffective assistance to petitioner by advising petitioner incorrectly as to his potential sentence if he was convicted at trial.

Ground Twelve (ineffective assistance of counsel):  Petitioner's counsel rendered ineffective assistance by failing to object to the applicability of United States v. Penn, 233 F.3d 1111 (9th Cir. 2000), and for failing to file a motion to recuse Judge Haggerty during the motion to suppress hearing.

Ground Thirteen (ineffective assistance of counsel):  Petitioner's trial counsel's performance was ineffective because Mr. Bailey failed to object to the fact that there were no Black or Hispanic jurors on the jury.

Ground Fourteen (actual innocence): Newly discovered evidence demonstrates that Officer Kyle Lewis's impoundment of the vehicle was unlawful, and in light of the new evidence, no reasonable jury could have found petitioner guilty.

Respondent argues that petitioner is not entitled to relief because several of his grounds for relief are procedurally barred, the default is not excused, and any remaining unbarred claims lack merit.

## STANDARDS

### I.   Evidentiary Hearing

The court must grant an evidentiary hearing to determine the validity of a petition filed under § 2255 "[u]nless the motions and the files and records of the case conclusively show that the [petitioner] is entitled to no relief ." 28 U.S.C. § 2255(b); United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994). The court may deny a hearing if petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. Mejia-Mesa, 153 F.3d 925, 931 (9th Cir. 1998). No hearing is required if credibility can be decided based on documentary testimony and evidence in the record. Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989). Conclusory statements, taken alone, are insufficient evidence to trigger the requirement of a hearing. United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).

### II.   Exhaustion and Procedural Default

Regarding potential claims that are not specifically enumerated in 28 U.S.C. § 2255, the Supreme Court, in Bousley v. United States, reaffirmed the following standard: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may

be raised in habeas only if the defendant can first demonstrate either 'cause' and actual
'prejudice' or that he is 'actually innocent.'" United States v. Braswell, 501 F.3d 1147, 1149 -
1150 (9th Cir. 2007) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). Habeas review
is not a substitute for an appeal. Bousley, 523 U.S. at 622.

The "cause and prejudice" test for excusing the failure to raise a claim on direct appeal
will apply, for example, where the claim rests upon a new legal or factual basis that was
unavailable at the time of direct appeal, or where "interference by officials" may have prevented
the claim from being brought earlier. Murray v. Carrier, 477 U.S. 478, 488 (1986). If a
petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating "not
merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his
*actual* and substantial disadvantage, infecting his entire trial with error of constitutional
dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphases in original). Finally, a
petitioner who fails to show either cause or prejudice can still obtain review of a claim on
collateral attack by demonstrating the likelihood of his or her actual innocence. *See* Bousley, 523
U.S. at 623.

## DISCUSSION

### I. Judicial Misconduct

#### A. Ground One:  Recusal of Judge Haggerty

Petitioner claims in Ground One that Judge Haggerty acted improperly by failing to
recuse himself from hearing and ruling on petitioner's motion to suppress physical evidence
because, in reaching his decision, Judge Haggerty relied on a district court opinion that he wrote,
namely United States v. Penn, 233 F.3d 1111 (9th Cir. 2000).  (Petitioner's Brief, p. 3).

Petitioner points out that, in pertinent part, 28 U.S.C. § 455(a) states that, "any... judge... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Further, 28 U.S.C. § 455(b)(1) provides that a judge must disqualify himself when "he has personal bias or prejudice concerning the party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See* Liteky v. U.S., 510 U.S. 540, 555 (1994). A ruling by itself cannot possibly show reliance upon an extrajudicial source, and can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. Id. Furthermore, opinions formed by the judge on the basis of facts introduced or events occurring in the course of prior proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Id.

Judge Haggerty's ruling in Penn and his decision to apply its precedent here does not demonstrate that Judge Haggerty had any personal bias or prejudice concerning a party, or that he had personal knowledge of disputed evidentiary facts concerning the proceeding. The Penn case is binding precedent for the Ninth Circuit. Judge Haggerty's application of Penn was appropriate and fully justified, just as its application would have been had any other judge in the Ninth Circuit ruled on petitioner's motion to suppress.

Petitioner also argues that Judge Haggerty misapplied the Penn precedent to his case. (Petitioner's Brief, p. 3). However, this is a legal issue which petitioner should have raised on direct appeal; petitioner does not show any cause for why he failed to do so, nor is there any

apparent cause present in the record. In addition to being without merit, petitioner's claim is procedurally barred. Accordingly, petitioner's claim on Ground One is denied.

## B. Ground Two: Improper Introduction of Evidence

Petitioner contends in Ground Two that Judge Jones improperly denied petitioner's Motion (doc. # 95) to Reconsider Motion to Suppress Physical Evidence and Petitioner's Statement. (*See* Order (doc. # 101) dated June 7, 2007). Petitioner should have raised this issue on direct appeal. Petitioner has not demonstrated any cause for why he did not do so, nor is any cause apparent from the record. Therefore, petitioner's claim in Ground Two is procedurally barred and is denied.

## II. Prosecutorial Misconduct

### A. Ground Three: Sentencing Enhancement

Petitioner alleges in Ground Three that the government vindictively applied the ACCA enhancement to petitioner's charges because the petitioner did not accept the plea bargain offered by the prosecution on February 16, 2007. (Petitioner's Brief, pp. 1, 5). After carefully reviewing the record, I conclude that the facts and the applicable law do not support petitioner's claim.

A prosecutor is given a wide breadth of discretion with which to do his or her job. As long as the prosecutor has probable cause to believe that the accused committed an offense as defined by statute, the decision regarding whether or not to prosecute and what charges to file generally rests entirely in the prosecutor's discretion. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). A defendant may establish a prima facie case of prosecutorial vindictiveness by showing "either direct evidence of actual vindictiveness or facts that warrant an appearance of such." United States v. Montoya, 45 F.3d 1286, 1299 (9th Cir.1995). However, while "'exceptionally

clear proof' is necessary to infer an abuse of prosecutorial discretion, McCleskey v. Kemp, 481

U.S. 279, 297 (1987), the government may not punish a person because he has "done what the

law plainly allows him to do." United States v. Goodwin, 457 U.S. 368, 372 (1982).

The government submitted its formal notice of enhancement on February 14, 2007, two

days before petitioner's defense counsel even requested a plea offer, which the prosecutor

tendered on the same day. Several days later, at the change of plea hearing on February 20, 2007,

petitioner made an independent decision to reject the government's plea offer. Therefore, any

appearance that the prosecution vindictively enhanced its charges against the defendant

specifically due to petitioner's failure to accept the plea agreement is temporally precluded.

However, it was well established that, by the time the government filed its notice of

enhancement, petitioner was intent on exercising his Sixth Amendment right to a jury trial.[1]

Nevertheless, the law has established that, in the context of *pretrial negotiations*, "vindictiveness

will not be presumed simply from the fact that a more severe charge followed on, or even

resulted from, the petitioner's exercise of a right." United States v. Gamez-Orduño, 235 F.3d

453, 462 (9th Cir. 2000). Such prosecutorial actions taken during ongoing plea negotiations do

not violate a petitioner's due process rights. Id. at 463.

In the case at hand, the petitioner presents no evidence of prosecutorial vindictiveness

other than the fact that, on February 14, 2007, while pretrial negotiations were ongoing, the

prosecution served formal notice that it was applying the ACCA to enhance the potential

---

[1]Mr. Edmonds, the attorney for the government, informed the court that, "[The defense
and I] had discussed settlement before the motion to suppress was litigated in this case, and it
was indicated to me there was no chance of settlement in the case. On Tuesday [February 13,
2007] I was told it was going to trial." (Transcript of Hearing, February 20, 2007, pp. 5-6).

sentence petitioner could receive as a result of his criminal record. This fact, standing alone, is insufficient to permit an inference of prosecutorial vindictiveness. There is no evidence that, at the time the prosecution decided to enhance the charges against the defendant, the prosecution lacked probable cause to believe that the petitioner had committed a crime of violence that triggered the application of the ACCA. Furthermore, the merit of the government's decision to apply the ACCA to the charges against petitioner is reinforced by the fact that this court approved the enhancement and the Ninth Circuit Court of Appeals subsequently affirmed this court's decision to do so. United States v. Eric Lavan Williams, 297 Fed. Appx. 599, No. 07-30416, 2008 WL 4648977 (9th Cir. Oct. 16, 2008). Accordingly, Ground Three is without merit, and is denied.

### B. Ground Four: Hearsay Testimony

Petitioner alleges that the government acted improperly by presenting false hearsay testimony to the grand jury that ultimately issued an indictment against petitioner. (Petitioner's Brief, p. 5). The alleged hearsay consists of the statements of Officer Kyle Lewis and Detective Robert Peterson regarding petitioner's confession. Petitioner contends that, in exchange for Officer Lewis's promise to try to convince the prosecutor and the judge to impose a more lenient sentence against petitioner, petitioner gave a false confession that he had touched and known about the weapons in the car. Petitioner further claims that the U.S. Attorney then used this "false hearsay testimony to deceive the Grand Jury into handing down an indictment against the defendant." Id.

First of all, the fact that petitioner's confession was hearsay when allegedly presented to the grand jury does not independently undermine the grand jury's decision to indict petitioner. Grand juries can properly indict suspects on the basis of hearsay, evidence seized in violation of the Fourth Amendment, or evidence obtained in violation of the Fifth Amendment. <u>U.S. v. Zielezinski</u>, 740 F.2d 727 (9th Cir. 1984). Furthermore, it is "well settled" in the Ninth Circuit that an indictment may be based on hearsay alone. <u>United States v. Al Mudarris</u>, 695 F.2d 1182, 1185 (9th Cir. 1983).

One who challenges an indictment carries a difficult burden and must demonstrate that the prosecutor engaged in flagrant misconduct which deceived the grand jury or significantly impaired its ability to exercise independent judgment. <u>Id.</u> While the exculpatory circumstances that petitioner now alleges may not have been divulged during the grand jury proceedings, the failure of a prosecutor to present such exculpatory evidence to a grand jury does not invalidate an indictment. <u>United States v. Buffington</u>, 815 F.2d 1292, 1304 (9th Cir. 1987). Furthermore, the petitioner was able to present evidence and arguments in support of the allegedly exculpatory circumstances of his confession at trial; however, petitioner's arguments did not dissuade the jury from determining beyond a reasonable doubt that petitioner had constructive possession of the weapons. Therefore, it does not follow that the potentially exculpatory evidence, if presented to the grand jury, would have dissuaded the grand jury from finding that there was probable cause-- a far lower standard than that of "beyond a reasonable doubt"--that the defendant had constructive possession of the weapons.

Accordingly, I find that if the government did present hearsay testimony of petitioner's confession to the grand jury, such action did not constitute flagrant misconduct because it falls

12 - OPINION AND ORDER

within the scope of the evidence that is typically presented in grand jury proceedings, there is no showing that the hearsay evidence deceived the grand jury or significantly impaired its ability to exercise independent judgment, and petitioner had the opportunity to rebut the allegedly improper evidence at trial. Ground Four is without merit, and is denied.

### C. Ground Five: Lack of Grand Jury Foreperson's Signature

Petitioner alleges that the government committed prosecutorial misconduct by presenting to petitioner grand jury indictments lacking a foreperson's signature.[2] However, the requirement that the grand jury foreperson sign an indictment is a formality, and the absence of a signature "is a mere technical irregularity that is not necessarily fatal to the indictment." Hobby v. United States, 468 U.S. 339, 345 (1984). Absent a showing of prejudice to the accused, a conviction will not be reversed merely because a minor or technical deficiency in the indictment is later discovered. Id. Petitioner has shown no prejudice resulting from the omission or redaction[3] of the signatures on the indictments. Because the mere absence of a grand jury foreperson's signature does not render either the original Indictment or the Superceding Indictment invalid, constitutionally or otherwise, petitioner's Ground Five lacks merit, and is denied.

.

---

[2]On February 14, 2007, a grand jury returned the Superseding Indictment (doc. # 70) to correct pleading problems in the original Indictment (doc. # 1). The original Indictment and the Superceding Indictment (doc. # 70) both contain what appears to be a redacted signature.

[3]Whether the jury foreperson's signature was omitted completely, or was redacted makes no material difference to the outcome in this case.

### D. Ground Six:  Failure to Prosecute Passenger

Petitioner claims that the government acted in an "unprofessional manner" and committed misconduct by failing to prosecute Ms. Donna Morrisson, who was a passenger in the vehicle at the time petitioner was stopped by local police.  (Petitioner's Brief, p. 6).  Petitioner further argues that the fact that the government failed to prosecute Ms. Morrisson demonstrates that the government is biased against petitioner.  Id.

In our criminal justice system, the executive branch has "broad discretion" to decide whom to prosecute.  United States v. Culliton, 328 F.3d 1074, 1081 (9th Cir. 2003).  "Because [claims of selective prosecution] invade a special province of the Executive --its prosecutorial discretion-- [the Supreme Court] has emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce clear evidence displacing the presumption that a prosecutor has acted lawfully."  Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 489 (1999) (internal citations omitted).

In this case, petitioner has not shown any clear evidence that the government acted unlawfully in its decision to prosecute only petitioner.  Furthermore, petitioner never argues and there is no basis in the record to support a finding that the government's decision not to prosecute Ms. Morrisson adversely affected petitioner's constitutional rights or a deprived petitioner of a fair trial.  Accordingly, Ground Six lacks merit, and is denied.

## III.    Other Constitutional Claims

### A. Ground Seven:  Fourth and Fifth Amendment Violations

Petitioner alleges that the weapons found in the trunk of the vehicle and petitioner's confession were improperly admitted into evidence at trial, in violation of petitioner's

14 - OPINION AND ORDER

constitutional rights.  More specifically, petitioner alleges that the traffic stop and search of the

vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures,

and that petitioner's confession to the Gresham police was the result of impermissible coercion in

violation of petitioner's Fifth Amendment right against self-incrimination.  (Petitioner's Brief,

pp. 3, 6, 7).

Before trial, Judge Haggerty denied petitioner's motion to suppress these pieces of

evidence, holding that the Gresham police's seizure and search of the vehicle was constitutional

and that petitioner's confession was made voluntarily and was not the product of impermissible

coercion. (Opinion and Order (doc. # 71) dated February 15, 2007, pp.7-8).  This court also

denied petitioner's request to reconsider Judge Haggerty's decision. (*See* Order (doc. # 101)

dated June 7, 2007). Petitioner has procedurally defaulted these claims by failing to properly

raise them on direct appeal.[4]  Further, petitioner has not shown sufficient cause for failing to raise

them, and no cause is apparent from the record.  Therefore, petitioner's claim in Ground Two is

procedurally barred and is denied.

### C. Ground Eight: Sixth Amendment Jury Selection Claim

Petitioner claims that he was deprived of his Sixth Amendment right to a jury of his peers

because the venire excluded Blacks and Hispanics and none of the jurors chosen for the panel

was Black or Hispanic. (Petitioner's Brief, p. 6).  However, this claim was not raised on direct

---

[4]Although petitioner raised the issue of the constitutionality of the Gresham police's
seizure and search of the vehicle in his reply brief at the appellate level, the United States Court
of Appeals for the Ninth Circuit properly declined to address the claim, citing United States v.
Puerta, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992) ("New arguments may not be introduced in a
reply brief.").

appeal and petitioner provides no cause to explain why he did not raise it.  Therefore, Ground
Eight is procedurally barred and is denied.

**IV.    Ineffective Assistance of Counsel**

A petitioner's Sixth Amendment right to representation in a criminal trial includes "the
right to the effective assistance of counsel." Duncan v. Ornoski, 528 F.3d 1222, 1233 -1234 (9th
Cir. 2008) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  It has been firmly
established that a prisoner may seek relief under 28 U.S.C. § 2255 based on ineffective assistance
of trial or appellate counsel.

To prevail on his claim of ineffective assistance of counsel, petitioner must show:  (1)
deficient performance by his counsel, and (2) prejudice.  Strickland v. Washington, 466 U.S. 668,
687 (1984).  To demonstrate deficient performance, petitioner must not only show that counsel
committed errors, but that counsel's performance "fell below an objective standard of
reasonableness" and that counsel's acts or omissions were not the "result of a reasonable
professional judgment." Id. at 690.  To demonstrate prejudice, petitioner must show that there is
"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different." Id. at 694.  The essence of an ineffective assistance of counsel claim
is that "counsel's conduct so undermined the proper functioning of the adversarial process" that
the subsequent proceedings "cannot be relied on as having produced a just result." Id. at 686.
Judicial scrutiny of counsel's performance is highly deferential, and there is "a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance." Id. at 689.  The reasonableness of counsel's conduct must be judged "on the facts of
the particular case, viewed as of the time of counsel's conduct." Id. at 690.

### A.    Plea Offer

#### 1. Ground Nine:  Insufficient Time to Consider the Plea Offer

Petitioner contends that John S. Ransom, petitioner's counsel at the time the government submitted its plea offer for petitioner's review, was ineffective because Mr. Ransom gave petitioner only fifteen minutes to consider the plea offer.  Petitioner stresses that, "15 minutes is not a lot of time to decide how [I am] going to spend the next fifteen years, eight months of . . . [my] life." (Petitioner's Brief, p. 2).  However, even assuming for the sake of argument that this decision by counsel would constitute ineffective assistance, petitioner's contention is not supported by the facts in the record, nor can petitioner demonstrate prejudice.

Regardless of how much time petitioner claims to have had to consider the plea offer on Friday, February 16, 2007, and make a decision as to whether or not to plead guilty, the facts in the record show that petitioner had ample time to review the plea offer.  First of all, the plain language of the government's plea offer clearly states that the offer remained open until February 20, 2007.  (Plea Agreement, ¶ 14).  Petitioner also stated in open court on February 20, 2007, that on Monday, February 19, 2007, he "spoke with [his] attorney... and told him 'no'," and that "it was never [the petitioner's] decision to plead guilty to the 15 years with no chance to appeal the matter." (Transcript of Hearing, February 20, 2007, p. 4).   Based on his testimony, the record is also clear that petitioner was confident in his decision to reject the government's offer.  Thus, it is apparent that petitioner engaged in multiple discussions with his attorney regarding the plea offer over the course of at least three days, and that petitioner demonstrated

.

during the change of plea hearing both a valid understanding of what the plea offer entailed and his determined intent to reject it.

I find that petitioner had sufficient time to confer with counsel for the purpose of evaluating and responding to the government's plea offer; therefore, petitioner has not demonstrated that counsel's performance fell below an objective standard of reasonableness. Petitioner's argument that Mr. Ransom's actions were deficient with respect to reviewing the plea offer is without merit, and accordingly Ground Nine is denied.

### 2. Ground Ten:  Failure to Renegotiate or Renew the Plea Offer

Petitioner alleges that his counsel rendered ineffective assistance by failing to renegotiate or renew the plea offer.  (Petitioner's Brief, p. 2).  The record demonstrates that both lawyers who represented petitioner prior to trial attempted to renegotiate the plea and skirt the application of the ACCA to petitioner's charges.  The government firmly denied each request.  (*See* February 16, 2007, email correspondence between Mr. Ransom and Mr. Edmonds; *see also* Mark Bailey Aff., p. 2).  There is simply no evidence that Mr. Ransom's and Mr. Bailey's efforts to secure a more favorable plea bargain were insufficient, even though they were unsuccessful.  Again, petitioner has not demonstrated that counsel's performance fell below an objective standard of reasonableness; therefore, Ground Ten is denied.

### B.  Ground Eleven:  Failure to Adequately Advise Petitioner About Potential Application of Armed Career Criminal Act and the Length of the Potential Sentence

Petitioner claims that his counsel was ineffective because counsel failed to advise petitioner about the possibility and implications of an ACCA sentencing enhancement if

petitioner was convicted at trial. (Petitioner's Brief, p. 4). However, the record shows that the

ACCA enhancement was an issue from the time the government filed its formal notice of intent

to seek the enhancement on February 14, 2007. There is no evidence in the record that counsel

failed to discuss its implications with petitioner at some point during plea negotiations or trial.

However, even if petitioner's allegation is taken as true, he cannot show prejudice. As discussed

above in Part II(A), it was fully within the government's discretion to apply the ACCA during the

course of pre-trial negotiations. There is no evidence that the petitioner or his counsel could have

done anything to prevent the government's request to apply the ACCA enhancement at

sentencing, despite counsel's reasonable professional efforts at negotiating and arguing for a

different result.

Further, petitioner claims that Mr. Ransom told him that he could not be imprisoned for

more than 264 months (22 years) whether or not he chose to go to trial. (Petitioner's Brief, p. 2).

Petitioner contends that he was misled, and had he known that the potential sentence could have

been longer, he would not have chosen to go to trial. In support of his claim, petitioner points to

an October 26, 2006, letter from Mr. Ransom to petitioner in which Mr. Ransom advised

petitioner that he "[did] not find a 30 to life," however, "there definitely is a possibility for 22

years." At sentencing, petitioner received a sentence of 288 months imprisonment, or 24 years.

Petitioner unreasonably construes the language of Mr. Ransom's letter, asserting that the

letter from Mr. Ransom states that petitioner would be facing no more than 22 years of

imprisonment. (Petitioner's Reply Brief, p. 6). Petitioner's interpretation does not follow from

the plain language of the letter. Mr. Ransom stated only that there definitely was a *possibility* for

22 years, and in no way did he imply that 22 years was the maximum potential sentence.

19 - OPINION AND ORDER

I find that counsel's prediction of a potential sentence of 22 years--if petitioner proceeded to trial--did not fall below an objective standard of reasonableness. Petitioner made the informed choice to reject a plea offer of 15 years, despite facing a statutory maximum sentence of life imprisonment if he proceeded to trial. At most, petitioner can argue that Mr. Ransom was off by 24 months (2 years). Such a relatively minor disparity between counsel's early pre-trial prediction and the ultimate sentence imposed nearly a year later after an extensive presentence investigation is not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; see also Iaea v. Sunn, 800 F. 2d 861, 865 (9th Cir. 1986) ("[A] mere inaccurate prediction, standing alone" by counsel as to the likely outcome of pleading or of failure to plead does not constitute ineffective assistance of counsel.). Accordingly, Ground Eleven lacks merit, and is denied.

### D. Ground Twelve:  Failure to Move for Recusal and to Object to Judge Haggerty's Application of United States v. Penn

Petitioner claims that his counsel rendered ineffective assistance by failing to object to the applicability of Penn and by failing to file a motion to recuse Judge Haggerty from the suppression hearing. (Petitioner's Brief, p. 4). As discussed above in Part I(A), there is no basis as a matter of law for either motion. Therefore, petitioner's counsel did not render ineffective assistance by declining to move to recuse Judge Haggerty or to object to the application of Penn to the facts of this case. Such decisions by counsel fall clearly within the range of reasonable professional judgment; accordingly, Ground Twelve is without merit and is denied.

**E. Ground Thirteen: Failure to Object to Absence of Black or Hispanic Jurors**

Petitioner contends for the first time in his *reply* brief that, while his objection to a jury panel lacking Blacks and Hispanics may be procedurally barred, petitioner's trial counsel provided petitioner with ineffective assistance of counsel by failing to object to the racial makeup of the jury. (Petitioner's Reply Brief, p. 7). Although the pleadings of *pro se* litigants are to be liberally construed, *see* United States v. Young, 936 F.2d 1050, 1052 (9th Cir. 1991), *pro se* litigants must nevertheless follow the same rules of procedure that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). New issues may not be introduced in a reply brief; therefore, the claim remains barred by procedural rules and the court does not reach this particular issue. *See* United States v. Puerta, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992).

However, even if the court were required to liberally construe petitioner's pleadings to address this claim, I would find that it lacks merit. The mere fact that petitioner's jury panel did not contain any Black or Hispanic jurors did not automatically oblige petitioner's counsel to object or otherwise pursue a claim alleging a violation of the Sixth Amendment's fair cross-section requirement. The Sixth Amendment guarantees criminal defendants a jury made up of a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 530 (1975). It does not guarantee a jury of "any particular composition," but instead requires only that the pool from which jurors are chosen "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. at 538.

The Supreme Court has developed the following three-part test for establishing a prima facie violation of the Sixth Amendment's fair cross-section requirement: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of

21 - OPINION AND ORDER

this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process. <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979). If the petitioner makes a prima facie showing under <u>Duren</u>, the burden shifts to the government to justify the infringement by demonstrating that attainment of a fair cross section is incompatible with a significant government interest. <u>Id.</u> at 367-68.

Other than the fact that there were no Black or Hispanic jurors on petitioner's jury, petitioner points to no other evidence which might have given petitioner's counsel cause to initiate an investigation into a potential violation of petitioner's Sixth Amendment's right to a jury made up of a fair cross-section of the community. In the absence of other evidence supporting a potential prima facie case as required under the <u>Duren</u> standard, <u>id.</u> at 364, a defendant's counsel should not be required to undertake a potentially time-consuming and expensive investigation into whether the jury venire was fair and reasonable in relation to the number of Blacks and Hispanics in the community, or whether the jury system systematically excluded Blacks or Hispanics. *See* <u>id.</u> at 366 (to indicate that the cause of the under-representation was systematic, petitioner showed that a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year). Counsel's decision not to undertake such an investigation was reasonable under the circumstances presented in this case; therefore, his performance did not fall below the standard of reasonably effective assistance. Accordingly, even if Ground Thirteen was not procedurally barred, it would be denied on the merits.

**V.    Ground Fourteen:  Actual Innocence**

Although petitioner does not explicitly state a claim of "actual innocence," he attempts to

bring in new evidence to support his case. (*See* Petitioner's Brief, p. 3).  Under the actual

innocence exception to a procedural bar, habeas petitioners asserting innocence as a gateway to

defaulted claims must establish that, in light of new evidence, it is more likely than not that no

juror would have found petitioner guilty beyond a reasonable doubt.  House v. Bell, 547 U.S.

518, 546-547 (2006).  In this case, the only piece of new evidence that petitioner offers is a

January 4, 2010, affidavit of Peggy Robertson, the owner of the car that petitioner was driving at

the time of his arrest, stating that the Gresham police never called her to get permission to search

her car, never contacted her to find out if the car was insured at the time of the traffic stop, and

never asked her if she was available to take possession of the car.

However, the court notes that Gresham Revised Code §§ 8.35.010(1)(g)(I), which

governs Officer Kyle Lewis's decision to impound the vehicle, provides that a vehicle may be

impounded when "the vehicle was in the possession of a person who a public safety officer or

law enforcement officer has probable cause to believe, at or just prior to the time the public

safety or law enforcement officer stops the person, has committed [the offense of] . . . driving

while suspended or revoked (O.R.S. 811.175 or 811.182), or driving an uninsured vehicle

(O.R.S. 806.010)" (emphases added).  Petitioner  was pulled over while driving with a suspended

license.  Therefore, the officer was justified in impounding the vehicle, whether or not the

vehicle was insured at the time of the traffic stop, and the officer need not have contacted the

owner of the vehicle before impounding it because it was in petitioner's possession at the time.

The contents of Peggy Robertson's affidavit would not have affected the court's decision regarding

the legality of Officer Lewis's decision to impound the vehicle, and it is entirely irrelevant to the jury's determination of guilt. Accordingly, petitioner's actual innocence claim fails on the merits, and Ground Fourteen is denied.

## CONCLUSION

Petitioner's request for an evidentiary hearing is DENIED. Further, having concluded that each of the fourteen grounds in the petition are either procedurally barred or lack merit, petitioner's Motion to Vacate, Set Aside, or Correct Judgment Pursuant to 28 U.S.C. § 2255 (doc. # 135) is DENIED. Pending motions, if any, are DENIED AS MOOT.

The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 1st day of February, 2012.

_____
ROBERT E. JONES
U.S. District Judge